IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


THE UNITED STATES OF AMERICA,

                                        Plaintiff,

        versus                                 3:17 CR 45

BENJAMIN FAULKNER,

                                        Defendant



Before:  HONORABLE JOHN A. GIBNEY, JR.
         United's States District Judge



May 17, 2017

Richmond, Virginia



GILBERT F. HALASZ
Official Court Reporter
U. S. Courthouse
701 East Broad Street
Richmond, VA 23219

APPEARANCES


Jessica D. Aber, Esq.
Assistant United States Attorney
For the United States



Cary B. Bowen, Esq.
For the defendant
The Defendant
In his own proper person

```
1          THE COURT:  Do you need more time?

2          MR. BOWEN:  I do not.

3          THE COURT:  Get me the file on the next one.

4          All right.

5          This is the matter of United States versus Benjamin

6     Bowman.  All right.

7          THE CLERK:  The defendant needs to sign a document.

8          THE COURT:  Okay.

9          Has the defendant signed the plea agreement?

10         MR. BOWEN:  He is about to.

11         THE COURT:  Let's get that signed.  Also, is the

12    waiver of indictment signed?

13         Where is your Washington colleague today?

14         MS ABER:  They determined after last week I would be

15    okay on my own.

16         THE COURT:  Well, that is good.

17         MR. BOWEN:  Is The Court making fun of -- I better

18    leave that alone.

19         THE COURT:  Not making fun of her.

20         I don't make fun of her.  She might come after me.

21         MR. BOWEN:  I was thinking about the Washington

22    lawyer.

23         THE COURT:  All right.

24         THE CLERK:  3:17 CR 45.

25         United States versus Benjamin Faulkner.
```

1        Ms Jessica Aber represents the United States.

2        Mr. Cary Bowen represents the defendant.

3        Are counsel ready to proceed?

4        MS ABER:  United States is ready.

5        MR. BOWEN:  We are, sir.

6        THE COURT:  All right.

7        I understand that we are here today for

8    Mr. Faulkner's guilty plea; is that correct, Ms Aber?

9        MS ABER:  That's correct, Your Honor.

10       THE COURT:  Trying to find the information in this

11   case.

12       Is this a one-count information?

13       MS ABER:  Yes, Your Honor.  I can pass up a copy if

14   you would like.

15       THE COURT:  All right.  Yes.  Okay.

16       This is a one-count information.

17       MS ABER:  Yes, Your Honor.

18       THE COURT:  Thank you.  Thank you very much.

19       All right.

20       Mr. Faulkner, could you please come up to the podium

21   with Mr. Bowen.

22       Mr. Faulkner, I have some questions to ask you today.

23   To make sure that you are competent to make a plea today;

24   that you understand what we are doing; what you are

25   getting, what you are giving up.

1          I would like you to answer those questions under oath

2     or affirmation.

3          Do you have any objection to swearing on a bible?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  All right.

6          Place your left hand on the bible, raise your right,

7     and face the clerk.

8                    (Defendant Sworn)

9          THE COURT:  All right, Mr. Faulkner.

10         Could you please state your full name.

11         THE DEFENDANT:  Benjamin Alexander Faulkner.

12         THE COURT:  And your date of birth?

13         THE DEFENDANT:  June 16, '91.

14         THE COURT:  Are you a citizen of the United States?

15         THE DEFENDANT:  No, I am not.

16         THE COURT:  You are a Canadian; is that right?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Do you read, write, and understand

19    English?

20         THE DEFENDANT:  Yes.

21         THE COURT:  How far did you go in school?

22         THE DEFENDANT:  Equivalent to masters degree here.

23         THE COURT:  And where did you get that, sir.

24         THE DEFENDANT:  I did my undergrad at Canadore

25    College and graduate school at Georgian College.

```
1          THE COURT:  Those are in Canada?

2          THE DEFENDANT:  Yes.

3          THE COURT:  What did you get your masters in?

4          THE DEFENDANT:  Computer security.

5          THE COURT:  Okay.

6          Do you understand that you are now under oath and

7     that means you say anything false about an important

8     matter while you are under oath you can be charged with a

9     separate crime of perjury or making a false statement?

10         THE DEFENDANT:  Yes, sir.

11         THE COURT:  Which would be in addition to anything

12    else.  Do you understand that?

13         THE DEFENDANT:  Yes, sir.

14         THE COURT:  Do you understand that anything you say

15    today can be used against you in later criminal or civil

16    proceedings?  Do you understand that?

17         THE DEFENDANT:  Yes, sir.

18         THE COURT:  Let me just give you sort of the low down

19    on what that might mean in your case.

20         I understand that there is a child victim in this

21    case, and if that child were to sue you at some point in

22    the future for injuries that you caused to him or her what

23    you say today can be used against you in that.

24         Do you understand that?

25         THE DEFENDANT:  Yes, sir.
```

1          THE COURT:  Should you also face charges somewhere

2    else -- I am sorry.  I have -- can you go get my phone and

3    turn it off, please.  I have hearing aids that have blue

4    tooth, and right now my phone is making noise and I am

5    hearing it here on the bench.  I apologize for this.

6          THE DEFENDANT:  That is actually really cool.

7          THE COURT:  It is very cool.  One time I was up here

8    and they started to play The Doors for me.

9          I am very sorry, Mr. Faulkner, it is not that I don't

10   take this seriously.

11         THE DEFENDANT:  No problem at all.

12         THE COURT:  I just did not expect that to happen.

13   All right.

14         So, if you have -- if similar events, like if you

15   have similar charges like this elsewhere, your guilty plea

16   today could be used to help establish your modis operandi

17   or method for doing things.  Do you understand that?

18         THE DEFENDANT:  Yes, sir.

19         THE COURT:  All right.

20         I have some questions now to ask you about your

21   physical and mental condition.

22         Are you currently under the care of a doctor or a

23   psychiatrist or psychologist, or anything like that?

24         THE DEFENDANT:  No.

25         THE COURT:  All right.

1          Have you recently been under the care of doctor or

2     psychologist, or any kind of health care professional?

3          THE DEFENDANT:  No.

4          THE COURT:  All right.

5          Have you recently been in a hospital for any reason?

6          THE DEFENDANT:  Yes.

7          THE COURT:  What were you in a hospital for?

8          THE DEFENDANT:  Attempted suicide.

9          THE COURT:  When was that?

10         THE DEFENDANT:  Seventh of last month.

11         THE COURT:  All right.

12         Obviously -- did you see a doctor when you were in

13    the hospital?

14         THE DEFENDANT:  Psychological variety?

15         THE COURT:  Any variety.

16         THE DEFENDANT:  Yes.

17         THE COURT:  And what -- tell me about your suicide

18    attempt.

19         THE DEFENDANT:  In what sense?

20         THE COURT:  What did you do?

21         THE DEFENDANT:  Well, it was, got a sheet and tried

22    to hang myself.

23         THE COURT:  Tried to hang yourself with a sheet?

24         THE DEFENDANT:  Yes.

25         THE COURT:  And were you unconscious as a result of

1   that?

2        THE DEFENDANT:  No.

3        THE COURT:  Did you -- did the doctors at the

4   hospital suggest that you had suffered any brain damage as

5   a result of that suicide attempt?

6        THE DEFENDANT:  They thought as much, but by the time

7   I left they said I didn't.

8        THE COURT:  Figured out you had done okay?

9        THE DEFENDANT:  Yes.

10       THE COURT:  Did they give you any medication to take

11  at that time?

12       THE DEFENDANT:  Nope.

13       THE COURT:  All right.

14       Do you take any regular medicines of any sort?

15       THE DEFENDANT:  No.

16       THE COURT:  Are you addicted to alcohol or drugs of

17  any sort, whether legal or illegal?

18       THE DEFENDANT:  Nope.

19       THE COURT:  Have you ever been treated for alcohol or

20  drug abuse?

21       THE DEFENDANT:  No.

22       THE COURT:  Although not addicted, do you abuse

23  alcohol or drugs, whether legal or illegal?

24       THE DEFENDANT:  No.

25       THE COURT:  All right.

1          Other than your suicide trip to the hospital -- I'm

2    not sure whether that falls in this category or not --

3    have you been treated during the past year for any kind of

4    mental illness?

5          THE DEFENDANT:  No, sir.

6          THE COURT:  Do you think you are suffering under any

7    mental illness that is undiagnosed at this time?

8          THE DEFENDANT:  No, sir.

9          THE COURT:  All right.

10         Mr. Bowen, do you have any doubts about his

11   competence or ability to understand today's proceedings

12   and to enter a plea?

13         MR. BOWEN:  I do not, sir.  I spoke to officials

14   about his suicide attempt and am satisfied that other than

15   bruises to his body and other things, he was okay.

16         THE COURT:  All right.  Thank you.

17         MR. BOWEN:  Yes, sir.

18         THE COURT:  Mr. Faulkner, you are charged with a

19   crime in what is called an information.  An information --

20   have you seen the information in this case?

21         THE DEFENDANT:  I believe so.

22         THE COURT:  Have you read it?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Did you talk about it with Mr. Bowen?

25         THE DEFENDANT:  Yes.

1      THE COURT:  All right.

2      You have a right under our law to be indicted.  That

3  means that before you get indicted the government goes and

4  presents its case the evidence it has in summary form to a

5  group of people.  And they decide whether there is

6  reasonable cause for you to be charged and go to trial.

7  In this case they haven't done that.  Instead they have

8  issued what is called a information.  An information is

9  kind over like a traffic ticket.  Have you ever gotten a

10  traffic ticket?

11      THE DEFENDANT:  Once.

12      THE COURT:  All right.  So what happens when you get

13  a ticket you park on the side of the road, the officer

14  writes down what he or she thinks you did, and they give

15  you the ticket and you go to court later on.  This is

16  analogous to that, although obviously much more serious.

17      What happens is that the government attorney, Ms Aber

18  write up what charge you face, and you go to trial or to a

19  plea based on that charge.  It doesn't go before a grand

20  jury.

21      Now, you have an absolute right to have your case

22  submitted to a grand jury.  And if you want to do that, I

23  am happy to have them do that and we will come back

24  another day, or you can go forward based on the

25  information.

1        Knowing that you have an absolute right to insist on

2   an indictment, is it nevertheless your desire to go

3   forward on the information?

4        THE DEFENDANT:  It is.

5        THE COURT:  I have in front of me here a document

6   called waiver of indictment.  It says that you understand

7   that you have been accused of the crime and you have a

8   right to be indicted and you decide not to go and have a

9   grand jury hear this case.  Knowing what I just told you,

10  is it still your desire to go forward on this waiver of

11  indictment?

12       THE DEFENDANT:  It is.

13       THE COURT:  All right.

14       I will accept that and I will sign it.

15       Okay.  All right.

16       Now, are you the person named in the information in

17  this case?

18       THE DEFENDANT:  Yes.

19       THE COURT:  Have you discussed the charges with your

20  attorney, Mr. Bowen?

21       THE DEFENDANT:  I have.

22       THE COURT:  Have you had a chance to tell him your

23  side of the case?

24       THE DEFENDANT:  Absolutely.

25       THE COURT:  Have you told him everything you know

1    about it?

2         THE DEFENDANT:  Um hum.

3         THE COURT:  All right.  You have to say "yes" or

4    "no."

5         THE DEFENDANT:  Yes, sir.

6         THE COURT:  And the reason I ask you that is that he

7    can help you best if he has all the information in the

8    case.  Do you understand that?

9         THE DEFENDANT:  Of course.

10        THE COURT:  All right.

11        Are you fully satisfied with the services and advice

12   provided to you by Mr. Bowen?

13        THE DEFENDANT:  A hundred percent, yes.

14        THE COURT:  All right.

15        Are there any questions that you have asked him that

16   he did not answer for you?

17        THE DEFENDANT:  No.

18        THE COURT:  Is there anything you have asked

19   Mr. Bowen to do that he has not done?

20        THE DEFENDANT:  No.  He works really well.

21        THE COURT:  All right.

22        Do you understand that you are charged with

23   aggravated sexual abuse.  Do you understand that?

24        THE DEFENDANT:  Yes.

25        THE COURT:  Do you understand that there is no

1    agreement with respect to sentencing in this case?  And

2    that if you plead guilty I will determine the sentence?

3        THE DEFENDANT:  Yes.

4        THE COURT:  All right.

5        Has Mr. Bowen gone over with you what the government

6    has to prove for you to be fund guilty of the charges in

7    this case?

8        THE DEFENDANT:  I believe so.

9        THE COURT:  All right.

10       I have a document in front of me here that says "plea

11   agreement" at the top.  And it has what appears to be your

12   signature on page ten.  Is this your signature on page ten

13   of the plea agreement?

14       THE DEFENDANT:  Yes it is.

15       THE COURT:  Did you sign that today?

16       THE DEFENDANT:  Yes.

17       THE COURT:  Before you signed it did you read the

18   plea agreement?

19       THE DEFENDANT:  I have it in the past.

20       THE COURT:  All right.

21       Did Mr. Bowen explain to you in the past what it

22   meant?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Did you ask him any questions you had

25   about it?

1        THE DEFENDANT:  Yes, I did.

2        THE COURT:  Did he answer those questions?

3        THE DEFENDANT:  To the fullest extent that I am aware

4   of.

5        THE COURT:  All right.

6        I have here also a document that says "statement of

7   facts."  This says essentially that you went across a

8   state line with the intent to engage in a sexual act with

9   a person under 12 years old, and that you did in fact have

10  some sort of sexual conduct or contact, rather, with a

11  four-year-old minor.  And that is what the statement of

12  facts says, in essence.

13       Did you read that statement of facts?

14       THE DEFENDANT:  Yes, I did.

15       THE COURT:  It has your signature on page three.  Is

16  that your signature?

17       THE DEFENDANT:  It is.

18       THE COURT:  Did you sign that today?

19       THE DEFENDANT:  I did.

20       THE COURT:  Did you read it before you signed it?

21       THE DEFENDANT:  I did.

22       THE COURT:  Did Mr. Bowen explain it to you?

23       THE DEFENDANT:  Yes.

24       THE COURT:  Did you have any questions about it?

25       THE DEFENDANT:  No.

1        THE COURT:  All right.

2        Did you sign the statement of facts because it is in

3   fact true?

4        THE DEFENDANT:  Yes.

5        THE COURT:  All right.

6        Are you pleading guilty because you are in fact

7   guilty of the charge against you?

8        THE DEFENDANT:  I am.

9        THE COURT:  Do you believe it is in your best

10  interest to plead guilty in this case?

11       THE DEFENDANT:  Yes.

12       THE COURT:  All right.

13       Okay.  Did Mr. Bowen before you signed these

14  documents go over with you the evidence that he believes

15  the prosecution or the government can present against you

16  in this case?

17       THE DEFENDANT:  Yes.

18       THE COURT:  Have you discussed with Mr. Bowen whether

19  in fact you are guilty of the charge with which you are

20  charged?

21       THE DEFENDANT:  Yes.

22       THE COURT:  All right.

23       Now, this plea agreement that we just looked at.  Is

24  that the complete agreement that you have with the

25  government?  In other words, do you have any side deals

1     that are not written down in that?

2          THE DEFENDANT:  Not that I know of.

3          THE COURT:  That plea agreement says that --

4          MR. BOWEN:  May I interrupt a minute?  I think there

5     is something else we are not talking about here.  The way

6     the government might make a recommendation.

7          THE COURT:  Getting ready to get to that.

8          MR. BOWEN:  All right, sir.

9          THE COURT:  In the plea agreement it says that the

10    government will not -- will agree not to recommend more

11    than 50 years of confinement for you.

12         Do you understand that?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Do you understand that that is not

15    binding on me?  That I could sentence you to more or less

16    than whatever they have?

17         THE DEFENDANT:  Yes.

18         THE COURT:  All right.

19         Now, are there any other side deals beyond that?

20         MR. BOWEN:  I explained to him that we have, we have

21    the privilege to argue for less than a 50-year sentence.

22         THE COURT:  Right.

23         MR. BOWEN:  And that will be -- and he has been over

24    that with me.

25         THE COURT:  All right.

1      You can always argue for less then they ask for.

2      MR. BOWEN:  And nobody knows what you are going to

3  do.

4      THE COURT:  That's right.

5      Do you have any agreement with anybody other than

6  what is in the plea agreement?

7      THE DEFENDANT:  No.

8      THE COURT:  All right.

9      Has anybody made any promises to you in order to get

10  you to plead guilty?

11      Other than what is in the plea agreement?

12      THE DEFENDANT:  No.

13      THE COURT:  Other than what is in the plea agreement

14  has anybody made any threats against you other than the

15  threat that they would continue to prosecute you?

16      THE DEFENDANT:  No.

17      THE COURT:  All right.

18      All right.  You are pleading guilty of your own free

19  will; is that right?

20      THE DEFENDANT:  That is correct.

21      THE COURT:  Now, you understand if you get a longer

22  sentence than you anticipate that you can't change your

23  plea to not guilty at that time?

24      THE DEFENDANT:  Yes.

25      THE COURT:  All right.

1        Do you understand that this charge is a felony and it

2  has some affect on your rights?  For instance, you cannot

3  possess a firearm in our country.  Do you understand that?

4        THE DEFENDANT:  Yes.

5        THE COURT:  It also will affect your residency

6  status.  At the end of any prison sentence that you get in

7  this case you will be deported to Canada.  Do you

8  understand that?

9        THE DEFENDANT:  Yes.

10       THE COURT:  All right.  Okay.

11       Do you understand that the maximum punishment for

12  this offense is life in prison, and that there is a

13  mandatory minimum of 30 years?

14       THE DEFENDANT:  Yes.

15       THE COURT:  Do you understand that the mandatory

16  minimum means that no matter how much I like you at the

17  end of this case I cannot sentence you to less than 30

18  years?

19       THE DEFENDANT:  Yes.

20       THE COURT:  All right.

21       Do you understand that you will also face something

22  called supervised release.  And I will tell you what that

23  is in a minute.  That can run five years to life.  Do you

24  understand that?

25       THE DEFENDANT:  Yes.

1          THE COURT:  All right.

2          Supervised release means that you have to report to a

3    probation officer periodically, and you will have some

4    restrictions on you; like, in your case they will be

5    allowed to look at any computers that you have or similar

6    devices that might exist in the future.

7          And you will have to have a job, and they may give

8    you drug screens and things like that.

9          Do you understand that that is the kind of

10   supervision that you will get, that you can get, at the

11   end of your time in prison in this case?

12         THE DEFENDANT:  Yes.

13         THE COURT:  All right.

14         You can also be fined for $250,000; do you understand

15   that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  Do you understand that part of your

18   sentence in this case can be that you will be required to

19   provide restitution to the child involved in this case?

20   In other words, if he or she has been injured in some way

21   and needs doctor's treatment or something like that, they

22   can come and ask you to pay that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  All right.

25         And you will be required to pay that.  Do you

1    understand that?

2          THE DEFENDANT:  Yes.

3          THE COURT:  All right.

4          You will also be required to pay a special assessment

5    of at least a hundred dollars, and if you have the funds,

6    up to $5,000.  Do you understand that?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.

9          Do you have any charges pending against you anywhere

10   else at this time?

11         THE DEFENDANT:  Tennessee.

12         THE COURT:  All right.

13         You have been indicted in Tennessee?

14         MR. BOWEN:  I am not sure you have been indicted.

15         THE COURT:  All right.

16         He is looking at the same charges there that the

17   other fellow was?

18         MS ABER:  Yes, Your Honor.

19         MR. BOWEN:  That's correct.

20         THE COURT:  All right.

21         So you may have some charges pending in Tennessee

22   either now or in the future, but you are not out on bond

23   on those or anything, are you?

24         THE DEFENDANT:  No.

25         THE COURT:  Are you on bond for any offenses anywhere

1    else?

2         THE DEFENDANT:  No.

3         THE COURT:  Are you currently under a suspended

4    sentence that might get revoked?  In other words, if you

5    are sentenced to a certain amount of time but the judge

6    did not impose it all?

7         THE DEFENDANT:  No.

8         THE COURT:  All right.

9         Have you and Mr. Bowen discussed the Federal

10   Sentencing Guidelines?

11        THE DEFENDANT:  Yes.

12        THE COURT:  All right.

13        Here is what the Federal Sentencing Guidelines are.

14   They are a system that the Federal Government has imposed

15   in which a probation officer will meet with you and gather

16   information about you and the offense with which you are

17   charged.  You will then -- they plug all that into a

18   formula, and the guidelines suggest to me a range of

19   sentence that you will receive.  It is typically in terms

20   of months.  So it could be like 240 to 280 months.  And

21   the guidelines suggest that I sentence you somewhere in

22   there.  Now, there are two things you need to know about

23   that.  One is that regardless of what the guidelines say,

24   you still face the 30 year mandatory minimum.  The second

25   thing is that the guidelines are advisory.  That means I

1    don't have to go by them.  I can sentence you above or

2    below those guidelines.

3         Do you understand that?

4         THE DEFENDANT:  Yes.

5         THE COURT:  Now, do you understand that we have to

6    compute a guideline range before you can be sentenced in

7    this case?

8         THE DEFENDANT:  Yes.

9         THE COURT:  Now, Mr. Bowen I am sure has gone over

10   with you where he thinks your guidelines will come out in

11   this case.

12        THE DEFENDANT:  He has been rather thorough.

13        THE COURT:  Thorough he is.  Mr. Bowen is one of the

14   best lawyers that we have who practices here.

15        THE DEFENDANT:  So I have been told.

16        THE COURT:  Excuse me?

17        THE DEFENDANT:  So I have been told.

18        THE COURT:  Well, you have been told correctly.

19        But, neither Mr. Bowen nor Mrs. Aber, nor I, nor

20   anybody else can tell you right now what your guidelines

21   are going to be.  No one can tell you that until a

22   probation officer meets with you, gets information from

23   you, gets information from other sources, and computes the

24   guidelines, submits them to me and I approve them.  So,

25   Mr. Bowen I am sure has given you as good an estimated,

1    educated guess as you can get, but it is exactly that, an

2    educated estimate.

3         Do you understand that?

4         THE DEFENDANT:  Yes.

5         THE COURT:  You will have the right before you are

6    sentenced to come and tell me if the guidelines are

7    computed correctly or incorrectly.  If you don't think

8    they are right, you let Mr. Bowen know and he will tell

9    me.  There will be other information in your presentence

10   report, kind of a mini biography that will tell me what

11   your life has been like.  If there is anything in your

12   presentence report that is not accurate or that is false,

13   it is your job to tell me so that I have the right

14   information in front of me when I sentence you.

15        I don't know you from Adam.  And one of the ways that

16   I get to know you is through your presentence report.  So,

17   please, when you meet -- you will have a chance to meet

18   with the probation officer and provide him or her

19   information about yourself.  Please be forthcoming in that

20   so that I will have the full picture of you when we come

21   to sentencing time.

22        Do you understand that?

23        THE DEFENDANT:  I will do the best I can.

24        THE COURT:  All right.

25        In addition -- and you will also have the right to

1    tell me if any of the factual data in the mini biography

2    is wrong.

3          All right.  So be sure to draw that to my attention.

4    Okay?

5          THE DEFENDANT:  Yes.

6          THE COURT:  All right.

7          In imposing a sentence on you, in addition to the

8    guidelines, the Federal Sentencing Guidelines, I will

9    consider the factors that are set out in United States

10   Code to determine your sentence.  I will tell you what

11   those are now so before you enter your plea you will know

12   what I will be looking at.

13         First, the nature and circumstances of the offense.

14   In other words, what happened?

15         Second, the history and characteristics of the

16   defendant.  In other words, what kind of person you are.

17         Third, the seriousness of the offense.

18         The need to provide just punishment for the offense.

19         The need to deter other people from committing

20   similar offenses.  In other words, to set an example so

21   people in the public won't do this in the future.

22         The need to deter you from doing this in the future.

23         The need to protect the public from further crimes by

24   you.

25         The ability of our correctional system to provide you

1  education or vocational training, medical care, or other

2  correctional treatment.

3      I will consider the kinds of sentences available, the

4  length of sentences imposed on other people for similar

5  crimes.

6      I will consider restitution.

7      And as I said, I will consider the Federal Sentencing

8  Guidelines.

9      I will try to come up with a sentence that is long

10  enough but not longer than necessary to address each of

11  those concerns.

12      Do you understand that that is what I will think

13  about in sentencing you?

14      THE DEFENDANT:  Yes.

15      THE COURT:  Do you understand that parole is

16  abolished abolished, and that if you are sent to prison,

17  you do not get release early on parole?

18      THE DEFENDANT:  Yes, sir.

19      THE COURT:  Do you understand that the prosecution is

20  allowed to appeal any sentence I impose in this case, but

21  you have given up that right in your plea agreement as

22  long as it is within the statutory limits of how long I

23  can sentence you?

24      THE DEFENDANT:  Yes.

25      THE COURT:  Okay.

1          By pleading guilty you are giving up a lot of

2     important rights that anybody who pleads guilty in this

3     courtroom would have.

4          One of those is the right to plead not guilty, go to

5     trial, and insist that the government prove you guilty

6     beyond a reasonable doubt.

7          If you go to trial the government would have to prove

8     every part of this offense against you beyond a reasonable

9     doubt.  You would be presumed innocent.  You would not

10    have to produce any evidence.  You would not have to call

11    witnesses.  And, most importantly, you would not have to

12    get up and testify yourself.  And if you didn't call

13    witnesses, or if you didn't produce documents or pictures

14    or anything like that, or if you didn't testify, nobody

15    could hold that against you because the government always

16    has the burden of proving you guilty beyond a reasonable

17    doubt.  And nobody could argue to the the jury, he must be

18    guilty because he didn't get up and tell you his side of

19    the story.

20         If Mr. Bowen wanted me to, I would tell them you

21    cannot hold -- I would tell the jury that they cannot hold

22    that against you.

23         But you have given that, all those rights up; do you

24    understand that?

25         THE DEFENDANT:  Yes.

```
1        THE COURT:  You would also have the right to have a

2   lawyer represent you.  And I understand that Mr. Bowen is

3   a retained lawyer.  That means you hired him.  If you were

4   to run out of money and couldn't afford him any more, I

5   would appoint a lawyer to represent you in this case.

6        You would, in any event, have a lawyer with you at

7   every stage of the case.

8        You would have the right to subpoena witnesses.  That

9   means you can ask The Court to enter an order telling

10  people they have to come here and testify.

11       You would have the right to see and hear all the

12  witnesses who testify against you.  They would have to

13  testify right in front of you about whatever facts they

14  offer to The Court.

15       Mr. Bowen would have the right to ask them questions.

16  And that is called cross examination.

17       You and Mr. Bowen would have the right to see any

18  documents or exhibits or photographs or anything like

19  that that the government would try to put into evidence,

20  and if appropriate, to object to that before it is

21  considered by the jury or me in the case.

22       But you have given up those rights as well.

23       Do you understand that?

24       THE DEFENDANT:  Yes.

25       THE COURT:  You have the right to be tried, as I
```

1    indicated a moment ago by a jury, a jury of 12 people.

2    They would have to vote unanimously to find you guilty.

3         If a single one of those 12 did not think you were

4    guilty, you could not be convicted -- sometimes they can

5    try you again -- but you could not be convicted.  You have

6    given up that right as well.  Do you understand that?

7         THE DEFENDANT:  Yes.

8         THE COURT:  When you plead guilty, as I said to you

9    earlier, you give up the right to remain silent.  And the

10   government can summons you and ask you questions in court

11   or before a grand jury, and you have to answer those

12   truthfully as long as they don't open you up to additional

13   charges or punishment.

14        So, for instance, if you were involved with other

15   people in the offense involved here they could call you as

16   a witness and you would have to say what role those people

17   had in this offense.  But you have given up that right as

18   well.

19        Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you understand that by pleading guilty

22   you are giving up all of those rights and there will be no

23   trial at all?

24        THE DEFENDANT:  Yes.

25        THE COURT:  All right.

1          You are charged with aggravated sexual abuse of a

2    minor.  In order to prove you guilty of that the

3    government has to show that you crossed a state line with

4    the intent to engage in a sexual act with a person under

5    the age of 12.  And that you knowingly engaged in a sexual

6    act with a person under the age of 12.  Do you agree that

7    the government could prove each of those facts?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Is there anything I have asked you today

10   that you did not understand?

11         THE DEFENDANT:  No.

12         THE COURT:  You have been very cooperative, and I

13   appreciate that.

14         Do you have any questions you want to ask me about

15   your rights or the charges against you, or the sentencing

16   procedures, or anything else we have covered?

17         THE DEFENDANT:  Between you and Cary you have been,

18   both been very thorough, and I am satisfied.

19         THE COURT:  So you have no questions.

20         THE DEFENDANT:  No questions.

21         THE COURT:  Do you need any additional time to talk

22   to Mr. Bowen before you are enter a guilty plea?

23         THE DEFENDANT:  I don't think so.

24         THE COURT:  Mr. Bowen, are you aware of any reason

25   why we should not accept his plea today?

1       MR. BOWEN:  No, sir.

2       THE COURT:  All right.

3       In that case, face the clerk and enter your plea.

4       THE CLERK:  Benjamin Faulkner, you understand the

5   charge against you in the criminal information.  I ask you

6   now, what is your plea, guilty or not guilty as to count

7   one?

8       THE DEFENDANT:  Guilty.

9       THE COURT:  All right.

10      Thank you very much, sir.  You may be seated.

11      THE DEFENDANT:  Thank you.

12      THE COURT:  It is the finding of The Court in case of

13  United States versus Faulkner that Mr. Faulkner is fully

14  competent and capable of entering an informed plea, that

15  Mr. Faulkner is aware of the nature of the charges and the

16  consequences of the plea, that the plea of guilty is a

17  knowing and voluntary plea, and the plea is supported by

18  an independent factual basis containing each of the

19  essential elements of the offense.  The plea is therefore

20  accepted and Mr.  Faulkner is now adjudged guilty of that

21  offense.

22      Mr. Faulkner, as I said earlier, they will be

23  preparing a presentence report about you in this case.  As

24  as I also said earlier, you will have the chance to meet

25  with the probation officer.  I urge you to take advantage

1    of that.  Mr. Bowen will be there.  And that way you will

2    be able to put your best foot forward when it comes to

3    sentencing you in this case.

4         When we come to sentence you, Mr. Faulkner, Mr. Bowen

5    will make argument or speech to me on your behalf.  You

6    also will have the opportunity to address The Court and

7    tell me what it is that you want me to think about in

8    sentencing you.

9         I strongly urge you to take that, because, as I said

10   to you earlier, I really don't know you very well.  And

11   one of the ways I get to know a little bit about you as a

12   person is what you say to me at sentencing.

13        Two things.  One is, before you get up and talk, go

14   over what you are going to say with Mr. Bowen so you don't

15   accidentally say something to hurt yourself.  Second,

16   practice it before you come because you will be nervous

17   that day.  And, you know, I don't want to you forget

18   something that you meant to say.  All right.

19        Let's set a date for sentencing in this case.  When

20   did we set that other one?

21        MS ABER:  September 26, Your Honor.

22        THE COURT:  All right.

23        Are you available the 26th of September, Mr. Bowen?

24   Or are you off --

25        MR. BOWEN:  I am looking to see what my wife has

1    written in this book.  And I am nervous as we speak.

2         Well, I see nothing through it, so I assume it is

3    good.

4         THE COURT:  All right.

5         Let's do that at 10:00 o'clock on the 26th.

6         Mr. Bowen, does that give you sufficient time to get

7    all the mitigation evidence that you think you might need?

8         MR. BOWEN:  I am confident it will.

9         THE COURT:  All right.

10        Well, if you run into problems in that regard, let us

11   know.

12        MR. BOWEN:  Thank you, sir.

13        THE COURT:  I don't want to throw things off.  All

14   right.

15        Anything else?

16        MS ABER:  No, Your Honor.

17        THE COURT:  Anything else?

18        MR. BOWEN:  No, but thank you for your kind comments,

19   even if they have misguided.

20        THE DEFENDANT:  I have known Mr. Bowen for a long

21   time.  He has laughed at me in court.  But not since I

22   started to wear the robe.

23        MR. BOWEN:  Once.

24        THE COURT:  I don't get laughed at as much now as I

25   used to.

```
1          All right.  Let's adjourn court.

2          Thank you very much, sir.

3          Sir, I will see you in September.

4

5                       HEARING ADJOURNED

6

7

8          The foregoing is a true and correct transcript.

9                   Gilbert Frank Halasz, RMR

10                  Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```